[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Oxford Resources Corporation, filed a two count complaint seeking to recover damages for the alleged breach of a lease agreement by the defendant, Burdo Painting, Inc. The plaintiff also names the guarantor of the lease agreement, Patrick Burdo, Jr., of Trumbull, as a defendant.
The plaintiff alleges that on April 4, 1990, the defendant entered into a vehicle lease agreement with the plaintiff. The lease agreement requires the defendant to pay $323.81 per month over a sixty month term. The lease agreement provides, inter alia: (1) that the defendant pay all fees and taxes; (2) that the defendant pay all maintenance expenses; (3) that the defendant is liable for excessive wear and tear; (4) that the defendant has an option to purchase the vehicle; and (5) that the plaintiff may assign a security interest in the vehicle. The lease agreement also provides that in the event of default, the plaintiff could terminate the lease and declare the unpaid balance to be due, together with any other outstanding amounts, late charges, attorney fees and collection costs. The plaintiff alleges that the defendant failed to make payment starting in July, 1990, and that the defendant owes the plaintiff approximately $10,000.00.
The defendant then filed an answer, along with a counterclaim and the following special defenses: (1) the plaintiff failed to provide the defendant with a fully executed contract pursuant to General Statutes 42-3;[1] (2) the plaintiff failed to provide the defendant with notice of its right to redeem pursuant to General Statutes 42-98(c), the Retail Installment Sales Financing Act ("RISFA"); and (3) the plaintiff failed to notify the defendant regarding disposition of the proceeds, pursuant to General Statutes 42-98(e) and42a-9-504(3) of the Uniform Commercial Code ("U.C.C."). The defendant's counterclaim alleges that the plaintiff violated General Statutes 42-110a et seq., the Connecticut Unfair Trade Practices Act ("CUTPA"), based on the plaintiff's alleged violation of General Statutes 42-98(c) and (e), and42a-9-504(3). CT Page 7837
The plaintiff has now filed a motion (#105) to strike the defendant's special defenses and counterclaim.[2] The motion was granted by this court (Ford, J.) on January 7, 1992. The defendant's objection and memorandum of law were not filed until January 21, 1992. However, the defendant filed a motion to reargue the plaintiff's motion to strike on the grounds that the motion was erroneously marked non-arguable on the calendar and that the motion was filed out of the sequence specified by Practice Book 112 and 113. The defendant's motion was granted by the undersigned.
A motion to strike tests the legal sufficiency of the allegations of any complaint, counterclaim or crossclaim, or any one or more counts thereof, to state a claim upon which relief can be granted. Practice Book 152(1); Ferryman v. Groton,212 Conn. 138, 142, 561 A.2d 432 (1989). A motion to strike may also be used to contest the legal sufficiency of a special defense. Practice Book 152(5); Kasrow v. Christensen,40 Conn. Sup. 287, 288, 492 A.2d 850 (1985, Burns, J.). A motion to strike admits all facts well-pleaded; Mingachos v. CBS, Inc.,196 Conn. 91 108, 491 A.2d 368 (1985); which are then construed in the light most favorable to the pleader. Blancato v. Feldspar, 203 Conn. 34, 36, 522 A.2d 1235 (1987). "If facts provable under the allegations would support a defense or a cause of action, then the motion to strike must fail." Ferryman v. Groton, supra, 142.
In support of its motion to strike the special defenses and counterclaim, the plaintiff argues that RISFA and Article Nine of the U.C.C. are not applicable to vehicle lease agreements. In response, the defendant argues that the lease was intended as "security," and is therefore governed by RISFA and the UCC. The defendant also argues that an installment sale was contemplated by the parties, and therefore, RISFA governs the lease agreement for this reason as well.
General Statutes 42-83(1) states that "[a] transaction subject to this chapter is also subject to the Uniform Commercial Code, title 42a. . . ." Section 42-83(e) defines "retain installment contract" as:
 Any security agreement, as defined in 42a-9-105(1) . . . including . . . an agreement to pay the retail purchase price of goods, or any part thereof, in installments over a period of time and pursuant to which a security interest, as defined in section 42a-1-201(37) is retained . . . . CT Page 7838
In the present case, the agreement between the parties is entitled "Closed-End Truck Lease Agreement." Paragraph One of the Official Comment to 42a-9-102 states that "[w]hen it is found that a security interest as defined in section 1-201(37) was intended, this article applies regardless of the form of the transaction or the name by which the parties may have christened it." Thus, before a court can determine whether the parties intended to create a lease or an installment sales contract, and before the court can determine whether RISFA applies to the present case, the court must first determine whether the parties' agreement constitutes a security agreement.
Section 42a-1-201(37) provides in relevant part that: Whether a lease is intended as security is to be determined by the facts of each case, however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security. (Emphasis added). General Statutes42a-9-102(1)(a) provides that Article 9 applies to any transaction, regardless of its form, which is intended to create a security interest in personal property. In re Brookside Drug Store, Inc., 29 U.C.C. Rep. 230, 233 (D.Conn. 1980). The list of factors which the court must consider in determining whether a lease agreement provides for a hidden security interest is as follows:
 (1) Whether there was an option to purchase for a nominal sum, (2) whether there was a provision in the lease granting the lessee an equity or property interest in the equipment, (3) whether the nature of the lessor's business was to act as a financing agency, (4) whether the lessee paid a sales tax incident to acquisition of the equipment, (5) whether the lessee paid all other taxes incident to ownership of the equipment, (6) whether the lessee was responsible for comprehensive insurance on the equipment, (7) whether the lessee was required to pay any and all license fees for operation of the equipment, and to maintain the equipment at his expense, (8) whether the agreement placed the entire risk of loss upon the lessee, (9) whether the agreement included a clause permitting the lessor to accelerate the CT Page 7839 payment of rent upon default of the lessee and granted remedies similar to those of a mortgagee, (10) whether the equipment subject to the agreement was selected by the lessee and purchased by the lessor for this specific lessee, (11) whether the lessee was required to pay a substantial security deposit in order to obtain the equipment, (12) whether the agreement required the lessee to join the lessor, or permit the lessor by himself, to execute a UCC financing statement, (13) whether there was a default provision in the lease inordinately favorable to the lessor, (14) whether there was a provision in the lease for liquidated damages, (15) whether there was a provision disclaiming warranties of fitness and/or merchantability on the part of the lessor, (16) whether the aggregate rentals approximate the value or purchase price of the equipment.
Id., 234-35.
In distinguishing a true lease from a security agreement in the guise of a lease, the court must ascertain the parties' intent. Granite Equipment Leasing Corp. v. Acme Pump Co., Inc.,165 Conn. 364, 368, 335 A.2d 294 (1973). "In the determination of the actual intent and purpose of the transaction, the negotiations surrounding it may properly be considered and its real nature is a question of fact to be resolved by the trier." Tishman Equipment Leasing, Inc. v. Levin, 152 Conn. 23, 29,202 A.2d 504 (1964).
The plaintiff's pleadings do not address the issue of whether the agreement was intended as security, nor do they address the issue of whether the agreement constitutes an ordinary lease or an installment sales contract disguised as a lease. Where the legal grounds for a motion to strike are dependent upon underlying facts which were not alleged in the movant's pleadings and which only could be proved by evidence that would be adduced at trial, the motion should be denied. Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348,576 A.2d 149 (1990). Therefore, the plaintiff's motion to strike the defendant's counterclaim and special defenses is denied.
So Ordered. Dated at Bridgeport, Connecticut this 19th day of August, 1992. CT Page 7840
WILLIAM B. LEWIS, JUDGE